UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PAUL KAIRIS,

                Petitioner,

- v -                                        Civ. No. 9:02-CV-1337
                                                                     (TJM/RFT)

UNITED STATES OF AMERICA,

                Respondent.

**APPEARANCES:**                                      **OF COUNSEL:**

PAUL KAIRIS
Petitioner, *Pro Se*
01-B-2421
Upstate Correctional Facility
Box 2001
Malone, NY 12953

HON. GLENN T. SUDDABY                    STEPHEN C. GREEN
OFFICE OF THE UNITED STATES ATTORNEY   Assistant United States Attorney
Attorney for Respondent
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

    *Pro se* Petitioner Paul Kairis brings a Motion to Set Aside Administrative Forfeiture of money seized from his apartment, pursuant to 18 U.S.C. § 983(e)(1). Dkt. No. 1, Compl. Respondent opposes the Motion. Dkt. Nos. 12 & 13. On March 21, 2006, Petitioner's Motion was referred to this Court for issuance of a Report-Recommendation and Order. For the reasons to follow, it is recommended that the Motion be **granted**.

## I.  FACTS

On July 4, 2000, the Onondaga County Sheriff's Department, while conducting an investigation into a hit and run, arrested Petitioner at his apartment for the accident.  Dkt. No. 12, Def.'s Mem. of Law at p. 2.  At that time, police observed in plain sight two (2) ziploc bags that subsequently tested positive for marijuana.  *Id.*  After obtaining a search warrant, the search revealed $1,433 in United States currency, the two ziploc bags, a brown paper bag containing more marijuana, a triple beam scale, a glass marijuana smoking bong, and a shoebox with residue from baggies containing marijuana.  *Id.* at pp. 2-3.[1]

Then on August 16, 2000, the Drug Enforcement Agency ("DEA") sent written notice of seizure of the $1,433 in U.S. currency by certified mail, return receipt requested, to Petitioner at the Onondaga County Justice Center.  *Id.* at p. 3; Dkt. No. 13, John Hieronymus Decl. at ¶ 4(b), Exs. 1, Notice & 2, Return Receipt, dated Aug. 21, 2000.  On August 21, 2000, Alice Dunn, an employee of the Onondaga County Justice Center, signed the return receipt accepting delivery of the notice of seizure.  Def.'s Mem. of Law at p. 3; Hieronymus Decl. at ¶ 4(b), Ex. 2, Return Receipt, dated Aug. 21, 2000.  Petitioner claims this notice was not delivered to him until September 12, 2000,[2] when a County Jail officer provided him with the notice.  Compl. at ¶ 1.  In addition to sending the notice by certified mail to Petitioner, on August 16, 2000, the notice was also sent by certified mail, return receipt requested, to Melissa Cobenais in Syracuse, with a signature by Kelly Abraham accepting

---

[1] Apparently the charges against Petitioner were dismissed.  Dkt. No. 15, Pl.'s Resp. at ¶ 1.

[2] Although Petitioner's Complaint states that the notice was delivered to him on September 13, 2000, Petitioner corrects this date in his Response stating that he received the notice on September 12, 2000.  *Compare* Dkt. No. 1, Compl. at ¶ 1 *with* Pl.'s Resp. at p. 9, Ex. A, Lt, dated Sept. 13, 2000.  Therefore, the Court will utilize the September 12th date.

delivery on August 21, 2000.³ Def.'s Mem. of Law at pp. 3-4; Hieronymus Decl. at ¶ 4(d), Exs. 5, Notice & 6, Return Receipt, dated Aug. 21, 2000.  On the same date, an attempt was made to send the notice by certified mail to Petitioner at a Syracuse address and to Melissa Cobenais at an Onondaga Nation location but the mail to Kairis at the Syracuse location came back unclaimed and the Cobenais mailing was returned for an insufficient address.  Def.'s Mem. of Law at pp. 3-4; Hieronymus Decl. at ¶ 4(c) & (e), Exs. 3, Notice, 4, Unclaimed Return Receipt for Kairis, 7, Notice, & 8, Returned Return Receipt for Cobenais.

The notice of seizure of the property was also published in *The Wall Street Journal*, a newspaper that circulates in the Northern District of New York, on August 28, September 5, and September 11, 2000.  Def.'s Mem. of Law at p. 4; Hieronymus Decl. at ¶ 4(f).  The notices stated that the deadline to file a claim was September 17, 2000, though the third notice incorrectly stated a filing date of September 11, 2000.  Def.'s Mem. of Law at p. 4; Hieronymus Decl. at ¶ 4(f), Ex. 9, Newspaper Publications.

All the notices sent explained the following: 1) the currency was seized as it was used or acquired for a drug related offense; 2) procedures were underway to administratively forfeit the money; 3) an interested party could request remission or mitigation of forfeiture or contest the forfeiture in the United States District Court; 4) the option to file a claim and cost bond of $250 or affidavit of indigency in lieu of a cost bond with the DEA Forfeiture Counsel to contest the forfeiture action; 5) the deadline to file the claim was September 17, 2000; and 6) the option to file a

---

³ The Court is not clear as to who Melissa Cobenais or Kelly Abraham are in relation to Petitioner, however, the DEA sent the notice to Kairis and Cobenais at the same Syracuse address, 400 Griffiths Street, 1st Floor Apt., Syracuse, NY 13208.  *See* Dkt. No. 13, Hieronymus Decl., Exs. 4, Return Receipt for Kairis & 6, Return Receipt for Cobenais, dated Aug. 21, 2000.

petition for remission or mitigation. Def.'s Mem. of Law at p. 4; Hieronymus Decl. at ¶ 4(f).

Again, Petitioner asserts he did not receive the notice from the jail officer until September 12, 2000. Compl. at ¶ 1. Then, as Petitioner alleges he did not know how to proceed or what legal motions he needed to send, he states that on September 14, 2000, Petitioner notarized an affidavit and sent it with a letter entitled "Remission or Mitigation of Forfeiture and/or To Contest Forfeiture" to the DEA by utilizing the facility mailbox. *Id.* at ¶¶ 2 & 3. On September 26, 2000, the DEA received the petition for remission or mitigation and the allegedly untimely claim. *Id.* at ¶ 4; Def.'s Mem. of Law at p. 4; Hieronymus Decl. at ¶ 4(g), Ex. 10, Pl.'s Petition and Claim, date stamped Sept. 26, 2000. On October 2, 2000, the DEA returned to Petitioner his claim by certified mail, return receipt requested, as "untimely," however, the DEA acknowledged receipt of the petition for remission or mitigation. Def.'s Mem. of Law at p. 5; Hieronymus Decl. at ¶ 4(h), Ex. 11, DEA Lt. to Kairis, dated Oct. 2, 2000; Compl. at ¶ 5. On October 10, 2000, Alice Dunn, an employee of the Onondaga County Justice Center, signed the return receipt of the mailing and accepted delivery for Kairis. Def.'s Mem. of Law at p. 5; Hieronymus Decl. at ¶ 4(h), Ex. 12, Return Receipt, dated Oct. 10, 2000. Petitioner states he received the returned filing of a claim on October 14, 2000, and then immediately resubmitted his documents complaining he did not receive the August 16, 2000 Notice until September 12, 2000. Compl. at ¶ 6. As the DEA states that no timely claim was filed, on October 27, 2000, the DEA administratively forfeited the $1,433 pursuant to 19 U.S.C. § 1609. Def.'s Mem. of Law at p. 5; Hieronymus Decl. at ¶ 4(I), Ex. 13, Decl. of Forfeiture, dated Oct. 27, 2000. On November 8, 2000, the DEA sent a letter to Petitioner by certified mail, return receipt requested, denying the petition for remission or mitigation. Def.'s Mem. of Law at p. 5; Hieronymus Decl. at ¶ 4(j), Ex. 14, DEA Decision, dated Nov. 8, 2000. On

November 20, 2000, Alice Dunn once again signed the return receipt and accepted delivery for Petitioner. Def.'s Mem. of Law at p. 5; Hieronymus Decl. at ¶ 4(j), Ex. 15, Return Receipt, dated Nov. 20, 2000. Petitioner received the denial shortly thereafter. Compl. at ¶ 7.

## II. DISCUSSION

Petitioner claims that his filing of a claim on September 14, 2000, to contest the forfeiture was timely, as the deadline was September 17, 2000, in that the prisoner mailbox rule applies and therefore the forfeiture should be set aside. Compl. at ¶ 11.

If a person seeks to attack a forfeiture, a motion to set aside an administrative forfeiture "shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5). In order to prevail on the motion, a person entitled to notice of forfeiture must establish that

> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; **and** (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1)(A)-(B) (emphasis added).

In determining whether reasonable steps were taken, the Supreme Court has held that due process will be satisfied as long as "notice [is] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). In *Dusenbery v. United States*, the Supreme Court examined the notice requirement regarding forfeiture proceedings and stated that "*Mullane* supplies the appropriate analytical framework." 534 U.S. 161, 167 (2002). The question raised by the Supreme Court was whether notice is "'reasonably calculated under all the circumstances' to apprise petitioner of the pendency

of the action[.]" *Id.* at 168. Thus, actual notice is not required but the Government is allowed "to defend the 'reasonableness and hence the constitutional validity of any chosen method . . . on the ground that it is in itself reasonably certain to inform those affected." *Id.* at 170 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. at 315).

Pursuant to 19 U.S.C. § 1607(a), if the civil forfeiture of seized property or United States currency is worth less than $500,000, then the Government must publish notice of the seizure and intention to forfeit the property or money seized "for at least three successive weeks" in a "newspaper of general circulation in the judicial district" in which the proceeding is brought, and send written notice to "each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75(a). The notice given to the person whose property or currency is to be seized shall:

> (1) Describe the property seized and show the motor and serial numbers, if any; (2) state the time, cause, and place of seizure; and (3) state that any person desiring to claim the property may, within 20 days from the date of first publication of the notice, file with the custodian or DEA Asset Forfeiture Section a claim to the property and a bond with satisfactory sureties in the sum of $5,000 or ten percent of the value of the claimed property whichever is lower, but not less than $250.

21 C.F.R. § 1316.75(b).

If the claim is not filed within the twenty days, then an administrative forfeiture occurs and the property or currency is declared forfeited. 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77(a). If the twenty days has passed, a claimant can thereafter file a petition for "remission or mitigation of forfeiture" within thirty days of receipt of notice of seizure. 21 C.F.R. § 1316.80(a). The DEA will have broad discretion in deciding whether to grant a petition for mitigation or remission. 28 C.F.R. § 9.5; *see also* 21 C.F.R. § 1316.81; 19 U.S.C. § 1618.

Furthermore, as part of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185,

114 Stat. 202 (2000), which amended the procedures applicable to civil judicial forfeiture proceedings,[4] "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure[]" and this claim "may be filed not later than the deadline set forth in a personal notice letter[.]"  18 U.S.C. § 983(a)(2)(A)-(B).  Then, "[n]ot later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture . . . or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties."  *Id.* at § 983(a)(3)(A).  If the Government does not timely file its complaint, it must return the seized property and can no longer "take any further action to effect the civil forfeiture of such property in connection with the underlying offense."  *Id.* at § 983(a)(3)(B).  Thus, the filing date of the claim is extremely important as it triggers the time by which the Government must file its complaint.

In *Houston v. Lack,* 487 U.S. 266 (1988), the Supreme Court held that the "filing" of an incarcerated *pro se habeas* petitioner's notice of appeal under FED. R. APP. P. 4(a)(1) is deemed to be "filed" when he delivers the mailing to prison authorities for forwarding to the court.  The Supreme Court stated that, for ordinary civil litigants, receipt rather than formal filing would determine timeliness since the litigant does not have control over the notice once in the possession of the court.  *Id.* at 273.  However, because the *pro se* prisoner must depend upon prison authorities to deliver the mail, based upon policy concerns of the lack of control by the prisoner, the mailbox rule would apply in this context.  *Id.* at 271, 273-76.  The "filing" rule in *Houston* has been extended to other cases to determine the date of filing and the Second Circuit "has consistently applied the

---

[4] Codified in 18 U.S.C. §§ 983, 985, and 28 U.S.C. §§ 2466-67.

mailbox rule to papers filed by state prisoners *initiating federal actions*." *Fernandez v. Artuz*, 402 F.3d 111, 114 n.2 (2d Cir. 2005) (citing *Fernandez v. Artuz*, 175 F. Supp. 2d 682, 684 n. 1 (S.D.N.Y. 2001) (discussing timeliness of *habeas* petition); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 n. 1 (2d Cir. 1999) (applying the *Houston* rule to the filing of administrative claims under Federal Tort Claims Act ("FTCA"), but stating that the *Houston* rule will not apply when there is a "specific statutory regime to the contrary"); & *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *modified on other grounds on reh'g*, 25 F.3d 81 (2d Cir. 1994) (applying *Houston* rule to § 1983 complaints filed by state prisoners)) (emphasis added); *see also Adeline v. Stinson*, 206 F.3d 249, 251 n. 1 (2d Cir. 2000) ("When a prisoner is proceeding *pro se*, as petitioner then was, federal courts generally consider his or her petition for *habeas corpus* to have been filed as of the date it was given to prison officials for forwarding to the court clerk."); *Atkinson v. United States*, 2005 WL 3555946, at *3 (N.D.N.Y. Dec. 28, 2005) (noting that "a federal habeas petition is deemed properly filed when *the prisoner* delivers the petition *to a prison official for mailing*" (citing *Fernandez v. Artuz*, 175 F. Supp. 2d at 684)) (emphasis in original).

Courts in other circuits have also extended the *Houston* rule. *See Longenette v. Krusing*, 322 F.3d 758, 764-65 (3d Cir. 2003) (holding that the mailbox rule does apply in an ***administrative forfeiture case***) (cited in *Fernandez v. Artuz*, 402 F.3d at 114 n.2); *Casanova v. Dubois*, 304 F.3d 75, 79 (1st Cir. 2002) (extending rule to state prisoner filing § 1983 complaint); *United States v. Moore*, 24 F.3d 624 (4th Cir. 1994) (applying the *Houston* rule to a notice of appeal in a criminal matter); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (extending the mailbox rule to state and federal prisoners filing § 1983 complaints and FTCA claims); *Thompson v. Raspberry*, 993 F.2d 513, 515 (5th Cir. 1993) (extending rule to objections filed to a magistrate judge's report and

recommendation); *Simmons v. Ghent*, 970 F.2d 392, 393 (7th Cir. 1992) (applying rule to a Rule 59(e) motion); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735-36 (4th Cir. 1991) (extending rule to civil complaints); *Moskovits v. Drug Enforcement Admin.*, 774 F. Supp. 649, 653 (D.D.C. 1991) (extending the mailbox rule to the filing of an affidavit with the Drug Enforcement Administration for forfeiture purposes); *Ortiz v. Cornetta,* 867 F.2d 146, 148-49 (2d Cir.1989) (extending the mailbox rule to the filing of complaints for statute of limitation purposes).

Since the *Houston* rule is applicable to instances wherein a prisoner seeks to initiate federal actions, we are persuaded that the rule should also be applicable to filing a claim for return of property as the same policy argument exists in that a petitioner-inmate must rely on prison officials to mail the claim on the inmate's behalf. Furthermore, the petitioner-inmate is subject to the efficiency of the prison administration.

Notwithstanding, if an administrative forfeiture decision has been rendered, generally, a federal court will lack jurisdiction to review the merits therewith. *United States v. One 1987 Jeep Wrangler*, 972 F.2d 472, 480 (2d Cir. 1992); *see also Boero v. Drug Enforcement Admin.*, 111 F.3d 301, 304-05 (2d Cir. 1997). A limited exception to this rule exists when there is a challenge to procedural deficiencies in the administrative process. *Aquasviva v. United States Drug Enforcement Admin.*, 2004 WL 1900341, at *3 (S.D.N.Y. Aug. 24, 2004) (citing *United States v. One 1987 Jeep Wrangler*, 972 F.2d at 479-80). Thus, the court's review "is limited to determining whether the agency followed the proper procedural safeguards when it declared [claimant's] property summarily forfeited." *United States v. One 1987 Jeep Wrangler*, 972 F.2d at 480 (alteration in original) (citation omitted); *see also United States v. Hewett*, 2003 WL 21355217, at *2 (S.D.N.Y. June 10, 2003) (quoting *United States v. One 1987 Jeep Wrangler*).

Here, the Government contends that Kairis failed to timely file a notice of claim and cost bond or affidavit of indigency as the prisoner mailbox rule does not apply and therefore, the $1,433 was properly forfeited pursuant to 19 U.S.C. § 1609(a). Def.'s Mem. of Law at pp. 5-14. If Respondent's contention is true, the Court would be divested of its jurisdiction to consider the merits of the forfeiture. However, Kairis asserts that he timely filed his notice of claim due to the prisoner mailbox rule and that there were extenuating circumstances because he did not receive the notice from the jail when it was in fact delivered. Compl. at ¶ 11; Dkt. No. 15, Pl.'s Resp. at p. 6. Therefore, even if the Court lacks jurisdiction in the one respect, jurisdiction remains to review Petitioner's allegation that the forfeiture was procedurally flawed.

The notices sent by the DEA stated that the deadline to file a claim was September 17, 2000. The DEA sent notice to Kairis where he was incarcerated by certified mail, return receipt requested, which was received, along with notice to his last known address in Syracuse, which went unclaimed. Def.'s Mem. of Law at p. 5. Notices were also sent to Melissa Cobenais at two addresses, one of which was returned and other was received at the Syracuse address. These notices were mailed on August 16, 2000, well in advance of the September 17, 2000 deadline. Petitioner claims that he did not receive the notice sent to him at the jail until September 12, 2000, merely five days prior to the deadline. An inquiry was made of the Onondaga County Sheriff's Office regarding the procedures of mail delivery to inmates. Def.'s Mem. of Law, Ex. A, Sheriff's Lt., dated Feb. 4, 2003. Deputy Egan of the Custody Administration Compliance Unit stated that certified mail would be signed by clerical staff and if the mail was not addressed as legal, it would be opened and processed the same day of receipt. *Id.* If the mail was designated legal, then it would be brought to the inmate and opened in front of said inmate. *Id.* Therefore, it was assessed that the certified

mailing of the notice signed by Alice Dunn on August 21, 2000, would have been received by Kairis on the same day or the next business day, August 22, 2000, not on September 12, 2000. *Id.*

In any event, the notice of claim filed by Kairis was not received by the DEA until September 26, 2000, nine days after the deadline passed. However, Petitioner mailed the notice of claim on September 14, 2000, and since this Court finds the prisoner mailbox rule applicable to administrative forfeiture claims, the filing of the claim should have been deemed timely filed as of the date of mailing, not the date of actual receipt by the DEA. As such, the date of the mailing was three days in advance of the September 17, 2000 deadline and Petitioner's application should have been considered.

As for the procedures followed by the DEA to fulfill the due process requirements, notice of the forfeiture was sent by certified mail to Kairis at the jail. The Supreme Court has held that when the Government sends notice of forfeiture by certified mail to a claimant's place of incarceration, due process is satisfied. *Dusenbery v. United States*, 534 U.S. at 166-67 & note 3 (citing *Whiting v. United States*, 231 F.3d 70, 76 (1st Cir. 2000) (due process satisfied by Government's sending certified letter to inmate at his prison facility absent proof that mail delivery was unreliable); *United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1315 (9th Cir. 1998) (adequate to send summons by certified mail to jail with procedures for distributing mail directly to the inmate); & *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996) (sufficient to send certified mail to prisoner at jail where he was located) (further citations omitted)); *see also Guzman v. United States*, 2005 WL 2757544, at *3 (S.D.N.Y. Oct. 24, 2005); *Patterson v. United States*, 2005 WL 2414765, at *3-5 (S.D.N.Y. Sept. 27, 2005). Three other certified letters were sent, though two were returned. The DEA also published in *The Wall Street Journal*, a newspaper circulated in the Northern District

of New York, notice of the forfeiture for three successive weeks as required. *See* 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75(a). The notices provided the requisite information dictated by 21 C.F.R. § 1316.75(b). *See* Hieronymus Decl., Exs. 1, 3, 5, & 7. The Court must assess if the DEA's notice, reasonably calculated under all the circumstances, apprised Kairis of the pendency of the action and afforded him an opportunity to present his objections. Although the DEA properly provided notice through certified mailings and publication, Petitioner was not afforded his opportunity to present objections as Petitioner's filing of the claim was rejected as "untimely." The DEA did not properly take into account the prisoner mailbox rule, thus, a procedural deficiency occurred.

Despite the DEA's assessment that the filing of a claim was untimely, Kairis' petition for remission or mitigation was entertained. *See* 21 C.F.R. § 1316.80(a). Based upon the DEA's broad discretion in deciding the petition, it was found that there was probable cause to believe the currency was furnished or intended to be furnished in exchange for a controlled substance, that there was insufficient documentation presented by Kairis to show a legitimate origin for the currency, and that there were no extenuating circumstances to warrant mitigation of the forfeiture. *See* 28 C.F.R. § 9.5; 21 C.F.R. § 1316.81; 19 U.S.C. § 1618; Hieronymus Decl., Ex. 14, DEA Decision, dated Nov. 8, 2000. Thus, the petition was denied. However, the fact that the DEA entertained the petition for remission or mitigation does not cure the procedural deficiency that occurred by the rejection of the filing of the claim.[5]

Therefore, it is recommended that the Motion be **granted** to the extent that the declaration of forfeiture be set aside and the DEA serve notice of the seizure upon Petitioner once again to his

---

[5] Petitioner does not challenge the timing of any complaint filed by the Government. *See* 18 U.S.C. § 983(a).

current, incarcerated address and allow for the filing of a new claim, which shall be deemed filed if and when Petitioner gives such claim to prison officials in accordance with the prisoner mailbox rule. *See Fernandez v. Artuz*, 402 F.3d at 114 n.2; *Longenette v. Krusing*, 322 F.3d at 764-65.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion to Set Aside an Administrative Forfeiture be **GRANTED** to the extent set forth in this opinion; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 5, 2006
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge